## Prewitt et al. v. Estate Building & Loan Ass'n.

Nov. 18, 1941.

R. W. Keenon for appellants.

Chester Silvers for appellee.

Opinion of the Court by Stanley, Commissioner, —Affirming.

In January, 1935, the appellants, G. M. Prewitt and his wife, together, bought 200 shares of stock in the Estate Building & Loan Association of the par value of $100 a share. In June, 1937, Prewitt bought an additional 72 shares. They paid $5 a share for the stock, and by their contract agreed to pay $100 per share additional in installments of not less than 50 cents per month or by cash in full at their option. This is in accordance with the usual plan of saving through the facilities of such institutions. The application stipulated:

"I understand that the initial payment of $5.00 per share is not a part of the withdrawal value of the shares subscribed and that no specified dividends are paid on same. This amount is withdrawable from the surplus only as set forth under the terms of the surplus certificate issued through this subscription. This subscription together with the by-laws constitute a contract between the member and the Association. No person has authority to change or alter the terms of this subscription or to bind the Association by any statement not contained herein."

The Association wrote the applicants when their application had been received advising them:

"The amount paid for your surplus certificate is not withdrawable, and draws no specified dividends."

There were issued to the purchaser a passbook and certificates denominated "Surplus Certificates," which stipulated that the holder would be entitled to receive or collect a proportional share in the surplus fund of the Association as defined by its by-laws when it became equal to the amount represented by the certificate. Like applications and certificates are copied in full in Southern Savings & Building Association v. Gray, 253 Ky. 429, 69 S. W. (2d) 738. See, also, Downes v. Southern Savings & Building Association, 266 Ky. 192, 98 S. W. (2d) 457. The purchasers signed receipts for the certificates which contained this paragraph:

"I understand that the membership or surplus certificate is not a part of the withdrawal value of the shares subscribed for and that no specified divi-

dends are paid on same, and I am satisfied with the Building and Loan Plan, and will co-operate to the best of my ability.''

It appears that G. M. Prewitt made deposits or further payments of $1,000, to the Association, which sum, with interest, was withdrawn in accordance with the terms of payment or deposit. After a while, in August, 1937, the appellants received notice that as non-borrowing members of the Association their membership would be cancelled if they did not pay up arrears of payments of 50 cents a share on their stock. It was then that Prewitt gave special attention to the character of his and his wife's investments, as he testified. About a month before the Association was voluntarily placed in the hands of the Banking Department of the State for liquidation, as an insolvent institution, this suit was filed to recover $1,060 paid for the stock above described. There were other like suits. All were referred to Honorable Strother Kiser as special commissioner. He found and reported that misrepresentations had been made by salesmen of the stock, one of whom was the secretary of the Association, to Mr. and Mrs. Prewitt as to the nature of the stock they were buying, the misrepresentations being in substance and effect that the transaction was like depositing their money in a bank at 7 per cent. interest and that it could be withdrawn at any time. Nothing was said to them about the obligation to pay installments on the stock until it should become fully paid up. The salesmen were either dead or out of the jurisdiction of the court. The commissioner recommended that it be adjudged the plaintiffs were not entitled to recover the amount sued for because they had been negligent in not reading the several papers above described, every one of which clearly defined the nature of the transaction. The special chancellor, Honorable L. O. Thompson, overruled exceptions to and confirmed the commissioner's report. He filed an exhaustive opinion fully covering the questions involved.

The appellee Building and Loan Association was organized under Section 854 et seq., of the Kentucky Statutes, as a co-operative institution. The so-called ''surplus certificates'' were for membership fees in the Association as authorized by Section 862a of the Statutes. All other persons joining the Association had paid the same fees subject to the same conditions, name-

ly, that they would be entitled to recover the amounts represented by the certificates or membership fees out of surplus earnings only. No such earnings became available.

It seems to us the case is ruled by Southern Savings & Building Association v. Gray, supra, and the reasoning in Downes v. Southern Savings & Building Association, supra. The appellants undertake to distinguish the Gray Case, but the opinion and reasoning fully cover the facts presented in this record. The decision is rested on the general principle that a person who has an opportunity to read a contract which he signs is bound by it, unless there was fraud in obtaining his signature. By his negligence he is estopped to claim it does not conform to the oral representations. This is simply a case where oral representations were made and the parties accepted them at face value, but the applications they signed, the receipts given for the stock certificates, and the certificates themselves clearly defined their rights and described the nature of their investment. These were retained without action to rescind the contract for more than two years and until the Association was on the verge of liquidation then a plea of fraud was raised for the first time. The Gray Case is in accord with decisions from other jurisdictions where membership certificates like these were paid for and rescissions sought thereafter. Draeger v. Kent County Sav. Association, 242 Mich. 486, 219 N. W. 637; Dorrity v. Greater Durham Building & Loan Association, 204 N. C. 698, 169 S. E. 640.

The judgment is affirmed.